UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
United States of America,

                   Plaintiff,

  -against-

Larry Fernandez,

                   Defendant.
```

No. 06-CR-484 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

On May 27, 2008, District Judge Gerard Lynch sentenced pro se movant Larry Fernandez to a term of 141 months imprisonment following Mr. Fernandez's guilty plea to charges of robbery and brandishing a firearm in relation to and in furtherance of such robbery.  (See Transcript of Proceedings Before Hon. Gerard E. Lynch, District Judge, dated May 27, 2008, ("Fed. Sent'g Tr.") [dkt. no. 244-1] at 17:10–20; 20:1–8.)  One month later, on June 27, 2008, Justice Megan Tallmer sentenced Mr. Fernandez to a twenty-five-year term of imprisonment following Mr. Fernandez's conviction in Bronx County Supreme Court on several counts arising out of an unrelated shooting incident.  (See Transcript of Proceedings before Hon. Megan Tallmer, Justice of the Supreme Court, dated June 27, 2008 ("State Sent'g Tr.") [dkt. no. 244-3] at 17–19.)  Justice Tallmer ruled that Mr. Fernandez's twenty-five-year sentence in state custody would run consecutively to the 141-month sentence the District Court imposed.  (See id.)

According to the Government, Mr. Fernandez began his state sentence at Green Haven Correctional Facility ("Green Haven") on July 9, 2008, and has remained incarcerated there ever since. (See Government's Letter in Opposition ("Gov't Opp.") [dkt. no. 244] at 3; but see dkt. no. 238-1 at 31-35 (showing Mr. Fernandez resident in several DOCCS facilities).) Before the Court is Mr. Fernandez's pro se motion in which he asks this Court to designate his state correctional facility nunc pro tunc as a federal facility and to designate his federal sentence as running concurrently with his state sentence. (See dkt. nos. 234, 238.) For the reasons described herein, the Court recommends that the Bureau of Prisons ("BOP") designate Mr. Fernandez's state correctional facility nunc pro tunc as a federal facility and that Mr. Fernandez's federal sentence be deemed to run concurrently with his state sentence.

## I.    Background

Mr. Fernandez was charged in 2007 with, inter alia, conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(b)(1) ("Count Two"), and brandishing a firearm in relation to and in furtherance of a crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 ("Count Three"). (See Superseding Indictment, dated Apr. 23, 2007,

dkt. no. 66.)[1]  The charges against Mr. Fernandez arose out of his participation in a conspiracy to rob drug dealers and others in possession of narcotics.  (See id. at 1.)  On April 25, 2007, Mr. Fernandez pleaded guilty to Counts Two and Three, (see Minute Entry for Apr. 25, 2007), and all other outstanding federal charges against him were subsequently dismissed.  (See dkt. no. 91.)

On May 27, 2008, Judge Lynch sentenced Mr. Fernandez to fifty-seven months imprisonment on Count Two and eighty-four months imprisonment for Count Three, to be served consecutively, for a total term of 141 months imprisonment, followed by three years of supervised release on Count Two and five years of supervised release on Count Three, which terms were to be served concurrently. (See Fed. Sent'g Tr. at 20:1–8.)

At the time of his sentencing before the District Court, Mr. Fernandez was awaiting sentencing in state court on separate charges.  On April 3, 2008, a jury in the Bronx County Supreme Court had convicted him on counts of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon

---

[1] Although the Superseding Indictment did not label the robbery conspiracy and brandishing charges as Count Two and Count Three, both the judgment Judge Lynch entered after Mr. Fernandez's sentencing, (see dkt. no. 91), and the transcript from the sentencing, (see dkt. no. 244-1), label them as such. Accordingly, this Court thus adopts such labels for the purposes of this Memorandum and Order.

in the third degree.   (See id. at 3:18-24; see also dkt. no. 244-

2 ¶ 6.)   Due to several adjournments, Mr. Fernandez would not face

sentencing for his state court convictions until after his

sentencing in the District Court for Counts Two and Three.   (See

Fed. Sent'g Tr. at 3:24-4:7.)

Counsel for Mr. Fernandez raised the prospect of adjourning

his federal sentencing until the state court justice rendered her

sentence, so that Judge Lynch could thereafter impose a sentence

that ran concurrently with Mr. Fernandez's state court sentence.

(See id. at 5:1-20.)   Judge Lynch declined to do so.   (See id. at

5:21-7:13.)   Noting that he had "no reason to think that [he] would

have a better basis for exercising that discretion than the state

court would," Judge Lynch stated that the "state court will make

its decision with respect to concurrent or consecutive" sentences

for Mr. Fernandez.   (Id. at 6:18-7:4.)   Because, Judge Lynch noted,

he could not "impose a sentence to run concurrently with something

that doesn't exist yet," i.e., Mr. Fernandez's forthcoming state

court sentence, it would instead have to be "up to the state court

to have the ultimate decision on whether its sentence would run

concurrently or consecutively" to Mr. Fernandez's federal

sentence.   (Id. at 4:14-21.)

On June 27, 2008, Justice Megan Tallmer of the Bronx County

Supreme Court sentenced Mr. Fernandez to twenty-five years

imprisonment, to be followed by five years of supervised release,

4

for the four counts for which he had been convicted in state court. (See State Sent'g Tr. at 19.)  Justice Tallmer held that the twenty-five-year sentence would run consecutively to the 141-month federal sentence Judge Lynch had imposed one month earlier.  (See id.)

On July 9, 2008, Mr. Fernandez began serving his state sentence.[2]  (See Gov't Opp. at 3.)  Mr. Fernandez remains incarcerated at Green Haven today.  (See id.)

On July 31, 2023, Mr. Fernandez filed a pro se request for nunc pro tunc designation, (see dkt. no 234), and soon thereafter filed a pro se amended petition for nunc pro tunc designation of his state court facility so that his state court sentence may be deemed to run concurrently with his federal sentence, (see dkt. no. 238, at 2).  Mr. Fernandez attached to each filing a number of exhibits that speak to his time in custody.  In addition to numerous certificates of completion for courses and programs he has undertaken while in custody, as well as documentation illustrating his robust employment history at state correctional facilities, Mr. Fernandez submitted seventeen letters from

---

[2] As noted above, while the Government asserts Mr. Fernandez began his state sentence at Green Haven on July 9, 2008, and has remained incarcerated there ever since, (see Gov't Opp. at 3), Mr. Fernandez's exhibits indicate he served at least a portion of his state sentence at other state correctional facilities before arriving at Green Haven in late 2010, (see dkt no. 234-1, at 27–35.)

different individuals attesting to his character.  (See dkt. no.
234-1, at 4-26.)

The Government filed its letter opposing Mr. Fernandez's
requests on October 25, 2023.  (See Gov't Opp.)  On October 10,
2023, the BOP sent the Court[3] a letter requesting "guidance as to
how Mr. Fernandez's federal sentence should run with respect to a
sentence he is serving with the State of New York[,]" as well as
"the Court's position on a retroactive designation in [Mr.
Fernandez's] case."  (Dkt. no 244-4, at 1-2.)

## II.  Applicable Law

The BOP possesses the "authority to make [a] nunc pro tunc
designation sought by" a prisoner.  McCarthy v. Doe, 146 F.3d 118,
123 (2d Cir. 1998).  The BOP derives such authority from 18 U.S.C.
§ 3621(b), which permits the BOP "to 'designate the place of the
prisoner's imprisonment,' and specifically notes that the Bureau
'may designate any available penal or correctional facility . . .
whether maintained by the Federal Government or otherwise.'"  Id.
at 122-23 (quoting 18 U.S.C. § 3621(b)) (emphasis in original).

Although such authority ultimately lies with the BOP, "this
Court may make a non-binding recommendation to the BOP" so that
the prisoner's "federal sentence [will] be deemed to have run
concurrently with his state sentence . . . ."  United States v.

_____

[3] This case was transferred to this Court on August 11, 2023.
(Dkt. no. 237.)

Benitez, 2009 WL 4857491, at *2 (S.D.N.Y. Dec. 11, 2009).  "[T]he
BOP Program Statement on the topic . . . suggest[s] that it is the
BOP's policy to ascertain the position of the sentencing judge in
its determination of nunc pro tunc designation requests."  United
States v. Alvarez, 2015 WL 1851658, at *3 (S.D.N.Y. Apr. 17, 2015).
As described above, the BOP has sought the Court's opinion in the
instant case.  (See dkt. no. 244-4.)  Judges in this District have
previously "recommended   to   the   BOP,   upon   application   by
defendants, that it retroactively designate federal sentences to
run concurrently with state sentences, and have reviewed such BOP
determinations."  Alvarez, 2015 WL 1851658, at *3.

    A state court order regarding whether a state sentence shall
be served concurrently or consecutively with a federal sentence
"'is not binding on federal authorities.'"  Id. (quoting Abdul-
Malik v. Hawk-Sawyer, 403 F.3d 72, 75 (2d Cir. 2005)); see also
Benitez, 2009 WL 4857491, at *2 ("New York's directive that
Benitez's state sentence run concurrently with any federal
sentence is not binding on the BOP.").  Instead, "[i]f a prisoner
. . . starts in state custody, serves his state sentence, and then
moves to federal custody, it will always be the Federal Government—
whether the district court or the Bureau of Prisons—that decides
whether he will receive credit for the time served in state
custody."  Setser v. United States, 566 U.S. 231, 241 (2012).

Where the BOP is asked to "designate a state facility for
concurrent service of a federal sentence," its stated policy is to
do so "'only when it is consistent with the intent of the federal
sentencing court or the goals of the criminal justice system.'"
Benitez, 2009 WL 4857491, at *2 (quoting BOP Program Statement No.
5160.05, Designation of State Institution for Service of Federal
Sentence, at 4 (2003)).

## III.  Discussion

### A.    This Court's Authority to Make a Recommendation

In the instant case, Judge Lynch did not decide whether
Mr. Fernandez would serve his federal sentence concurrently or
consecutively with his yet-to-be-imposed state sentence.  (See
Fed. Sent'g Tr. at 4:10–21; 6:9–7:13.)   Judge Lynch said at Mr.
Fernandez's federal sentencing hearing that "the state court []
[has] the ultimate decision on whether its sentence would run
concurrently or consecutively to this one."   (Id. at 4:16–21.)
(emphasis added).   Judge Lynch left it to the state court to
determine later whether Mr. Fernandez's state sentence would run
concurrently or consecutively to the 141-month federal sentence he
imposed that day.   Justice Tallmer subsequently made such
determination by ordering that Mr. Fernandez's twenty-five-year
state sentence should run consecutively to his federal sentence.

However, Justice Tallmer's decision does not bind this Court
or the BOP.   See Abdul-Malik, 403 F.3d at 75; Benitez, 2009 WL

4857491, at *2.  Only this Court or the BOP may determine whether
Mr.   Fernandez's   federal   sentence   runs   concurrently   or
consecutively to his state sentence.  See Setser, 566 U.S. at 241.

Judge   Lynch   never   made   such   determination,   instead
acknowledging at Mr. Fernandez's sentencing hearing that he could
not "impose a sentence to run concurrently with something that
doesn't exist yet" and that he "[had] no reason to think that [he]
would have a better basis" to make such determination "than the
state court would."   (See Fed. Sent'g Tr. at 4:14-16; 6:18-20.)
At no time during the hearing did Judge Lynch decide whether Mr.
Fernandez's 141-month federal sentence would run consecutively or
concurrently with the state court's forthcoming sentence.

Therefore,  contrary  to  the  Government's  assertion,  Judge
Lynch was "silent as to whether [Mr. Fernandez's] federal sentence
should be served consecutively to or concurrently with his not-
yet-imposed state sentence."   (Gov't Opp. at 6 (quoting McCarthy,
146 F.3d at 121).)   That Judge Lynch rejected defense counsel's
proposal to adjourn federal sentencing until after the state court
sentencing hearing does not mean he affirmatively adopted whatever
prospective determination the state court would make with respect
to whether Mr. Fernandez's state sentence would run consecutively
or concurrently with his federal sentence.  Although Judge Lynch
acknowledged he was not "going to have the last word" on the issue,
(see Fed. Sent'g Tr. at 6:23-25), he did not, and could not, yield

9

to the state court the authority to determine if Mr. Fernandez's
federal sentence would run concurrently or consecutively with his
state sentence.

Because Judge Lynch did not decide whether Mr. Fernandez's
federal sentence would run concurrently or consecutively with his
state sentence, this Court may recommend that the BOP retroactively
designate Mr. Fernandez's state facility nunc pro tunc as a federal
facility and that his federal sentence run concurrently with his
state sentence.  See Alvarez, 2015 WL 1851658, at *2-4
(recommending that the BOP retroactively designate prisoner's
federal sentence to run concurrently with his state sentence where
District Court had not previously made such determination).

The Supreme Court's decision in Setser v. United States
compels no different conclusion.  566 U.S. 231 (2012). The
Government argues that Setser represents a "clarifying holding" as
to the District Court's authority to order sentences concurrently
or consecutively with state sentences.  (See Gov't Opp. at 5.)
Alluding to Setser, Mr. Fernandez also argues that Judge Lynch
"may have ordered" the federal sentence to "run concurrently with
an un-imposed state sentence" had he "known he had the power" to
do so.  (Dkt. no. 234 at 1.)

The Supreme Court held in Setser that federal district courts—
not the BOP—have authority at the time of sentencing to determine
whether a federal sentence should be served concurrently or

consecutively with an "anticipated state sentence that has not yet been imposed."   See Setser, 566 U.S. at 233, 236-37 (emphasis added).   Thus, if the Court were presently asked to "impose a sentence to run concurrently with" a state sentence "that doesn't exist yet," as Judge Lynch put it, Setser clarifies that it would have the sole authority and ability to impose such a concurrent sentence.  (See Fed. Sent'g Tr. at 4:14-16); see also Setser, 566 U.S. at 233, 236-37.   But that is not the task presently before this Court.

Instead, Mr. Fernandez seeks retroactive designation of his state correctional facility nunc pro tunc as a federal facility and designation of his federal sentence to run concurrently with the state sentence Justice Tallmer has already imposed.   The Supreme Court in Setser only addressed federal courts' authority to make such determinations in anticipation of forthcoming state sentences.  Setser, 566 U.S. at 233, 236-37.  It "did not address[] . . . how determinations should be made about retroactive designations that have the effect of making federal and state sentences run concurrently when the federal sentencing judge was originally silent on the issue."  Alvarez, 2015 WL 1851658, at *2 (emphasis added).   Because Judge Lynch stayed silent on whether Mr. Fernandez's federal sentence would run concurrently or consecutively with his state sentence, and because this Court already knows the terms of the state sentence Justice Tallmer

11

imposed and need not anticipate such sentence, <u>Setser</u> does not affect this Court's role in Mr. Fernandez's request for a retroactive designation.  See <u>id.</u>  In such situations, the role of the Court remains only to make a recommendation to the BOP, rather than to decide the issue itself.  See <u>id.</u> at *2-3.

B.      **Fulfilling the Goals of the Criminal Justice System**

In light of the above, this Court shall make a recommendation to the BOP with respect to the <u>nunc pro tunc</u> designation Mr. Fernandez requests.  In making its recommendation, the Court takes into account the BOP's relevant policy, which states that "[a] designation for concurrent service of sentence will be made only when it is consistent with . . . the goals of the criminal justice system."  BOP Program Statement No. 5160.05(8), Designation of State Institution for Service of Federal Sentence, at 4 (2003).  To determine the goals of the criminal justice system, the Court looks to the factors set out in 18 U.S.C. § 3553(a).

After a review of the parties' submissions, the Court finds that the goals of the criminal justice system are best served by designating Mr. Fernandez's state facility <u>nunc pro tunc</u> as a federal facility and deeming his federal sentence to run concurrently with his twenty-five-year state sentence.

With respect to the nature and circumstances of the offense, surely Mr. Fernandez's offenses are among the most serious.  As noted, he pleaded guilty to a gunpoint robbery and kidnapping in

violation of 18 U.S.C. §§ 1951, 924(c)(1)(A)(ii) and 2.  (See dkt.
no. 91.)   In state court, he was convicted of attempted murder,
assault, and criminal possession of a weapon arising out of a
shooting that caused his victim to lose a leg.  (See Fed. Sent'g
Tr. at 3:18-24; State Sent'g Tr. at 7-8.)   There is no doubt that
such heinous crimes require a serious sentence.

     With respect to the history and characteristics of the
Defendant, Mr. Fernandez's criminal history speaks for itself.  On
the other side of the scale, however, are his extraordinary
rehabilitation and abundant good works during the period of his
lengthy incarceration.  As noted above, Mr. Fernandez submitted a
voluminous record of his accomplishments during his time in state
custody, including employment records and numerous Inmate Progress
Reports characterizing him as an "excellent" employee. (See dkt.
no. 234-1, at 27-48.)   Of the seventeen character letters Mr.
Fernandez submitted, ten were written by corrections officers at
Green Haven.  (See id. at 7-8, 13-20.)

     Read together, these letters describe Mr. Fernandez as a
polite, hard-working man who volunteers his time in various
constructive programs at Green Haven and would contribute to
society immediately upon his release from his incarceration.  (See
id.)   One Green Haven corrections officer went so far to say he
"wish[ed] all inmates acted in [Mr. Fernandez's] manner," (see id.
at 15), while a social worker in the state's Office of Mental

13

Health who has known Mr. Fernandez since at least 2018 remarked that Mr. Fernandez "utilizes every opportunity to help others" and "will be an asset to his community" upon his release from prison, (id. at 5.)  A sergeant who has worked with Mr. Fernandez for over four years and has twenty-four years' experience as a corrections officer opines that "Larry is no risk to return to his previous ways that incarcerated him in the first place."  (Id. at 7.)  Another officer, who has worked at Green Haven for eleven years, notes that he has been "asked many times over the years to write this kind of letter but ha[s] refused" and goes on to say, "I truly believe Mr. Fernandez has made the changes in his life to be a productive member of society."  (Id. at 17.)  Another corrections officer who has observed Mr. Fernandez's visits with his family and friends for five years comments that Mr. Fernandez's interactions with his wife and two sons have been "very inspirational" and that Mr. Fernandez's "decision making process is greatly influenced by his responsibility as a husband, father and a man of God."  (Id. at 16.)  He sees Mr. Fernandez as "being a productive citizen when returning back into society."  (Id.)  Finally, a friend from 1996 has offered Mr. Fernandez employment "as well as housing, moral and financial support upon his release." (Id. at 22-23.)

With respect to the paragraph two factors, certainly there is a need to punish Mr. Fernandez for his heinous crimes.  In the

Court's view, however, his incarceration of some fifteen years now fulfills that sentencing objective.

General deterrence is always a factor, and again the Court evaluates that a sentence of this length will deter others attempting to prey on the community in a way that Mr. Fernandez did.

With respect to specific deterrence, the Court notes the many declarations filed in support of Mr. Fernandez attesting that he will not be a danger to the community.  Accordingly, the Court finds that this sentencing objective is fulfilled.

The paragraph (D) factors of educational and vocational training seem to have been fulfilled here, too, based on the letters and certificates Mr. Fernandez filed.  The factors of medical care or other correctional treatment do not seem to be relevant.

The Court is aware of the paragraph (3), (4), and (5) factors.

Given the length of Mr. Fernandez's incarceration of some fifteen years, the Court does not perceive that any unwarranted sentencing disparity would be present if Mr. Fernandez's sentences ran concurrently.

Finally, the paragraph (7) factor of restitution is not particularly relevant here.

On balance, in light of Mr. Fernandez's rehabilitation and good works while incarcerated and the opinions of the corrections

offers who have known Mr. Fernandez for years that he will be a contributing member of society if released, it is the Court's view that no criminal justice objective will be served by lengthening Mr. Fernandez's period of incarceration.  For that reason, the Court recommends to the BOP that it designate his state facility <u>nunc pro tunc</u> as a federal facility for the purpose of serving his sentence.

**IV.   Conclusion**

The Court RECOMMENDS that the BOP retroactively designate Mr. Fernandez's state correctional facility <u>nunc pro tunc</u> as a federal facility and that Mr. Fernandez's federal sentence run concurrently with his state sentence.  The BOP should promptly review Mr. Fernandez's request and consider this Court's recommendation in exercising its discretion to grant or deny the request.  The Clerk of the Court shall mail a copy of this Memorandum and Order to Mr. Fernandez, and to the BOP at the address listed in its letter to the Court, (<u>see</u> dkt. no. 244-4).

**SO ORDERED.**

Dated:     November 16, 2023
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge