UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>LARRY FERNANDEZ,<br><br>　　　　　　　　　Defendant. | No. 06-CR-484 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

　　Before the Court is Defendant Larry Fernandez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and, in the alternative, for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (See dkt. no. 251 (the "Motion"); see also dkt. nos. 254, 262, 266, 274.)  The Government opposes the Motion.  (See dkt. nos. 253, 269.)  For the reasons set forth below, Defendant's motion pursuant to § 2255 is denied, and his motion pursuant to § 3582(c)(1)(A) is granted.

I.　**Background**

　　The Court assumes the parties' familiarity with the facts of the case and will summarize only the facts relevant to the instant Motion.[1]

　　On March 17, 2003, Defendant participated in a gunpoint robbery and kidnapping in the Bronx, New York.  (See dkt. no. 66 at 2.)  In April 2007, Defendant pled guilty to (i) substantive

---

[1] Unless otherwise specified, the facts are drawn from the parties' submissions and are undisputed.

1

Hobbs Act robbery in violation of 18 U.S.C. § 1951 and (ii) brandishing a firearm in furtherance of the Hobbs Act robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  (See dkt. no. 91.)  On May 27, 2008, Judge Gerard E. Lynch sentenced Defendant to fifty-seven months imprisonment on the Hobbs Act robbery count, to be followed by the statutory minimum of eighty-four months imprisonment on the brandishing count.  (See Transcript of Proceedings Before Hon. Gerard E. Lynch, District Judge, dated May 27, 2008 [dkt. no. 96] at 17:10-20; 20:1-8.)

On June 27, 2008, Justice Megan Tallmer of the Bronx County Supreme Court sentenced Defendant to a twenty-five-year term of imprisonment following his conviction in that court on several counts, arising out of an unrelated shooting incident.  (See Transcript of Proceedings before Hon. Megan Tallmer, Justice of the Supreme Court, dated June 27, 2008 ("State Sent'g Tr.") [dkt. no. 244-3] at 17-19.)  Justice Tallmer ruled that Defendant's twenty-five year sentence in state custody would run consecutively to the imposed federal sentence.  (See id.)

On November 16, 2023, upon Defendant's request, this Court recommended that the Bureau of Prisons ("BOP") retroactively designate Mr. Fernandez's state correctional facility nunc pro tunc as a federal facility and that Mr. Fernandez's federal sentence run concurrently with his state sentence.  (See dkt. no. 245 ("Nov. 16 Order") at 16.)  The Court's role was "only to make

2

a recommendation to the BOP, rather than to decide the issue itself." (Id. at 12.) On December 7, 2023, the BOP determined that a retroactive designation was appropriate for Defendant's fifty-seven-month term of imprisonment on the Hobbs Act robbery count, while maintaining the consecutive eighty-four-month sentence for the brandishing count. (See dkt. no. 251, Ex. 1.) Currently, Defendant is in state custody, serving his twenty-five-year state sentence at Green Haven Correctional Facility. (See dkt. no. 266 at 2, 8.)

On February 23, 2024, Defendant acting pro se, filed his Motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and, in the alternative, for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (See dkt. no. 251.) On April 2, 2024, Defendant submitted a supplemental pro se letter and amended motion. (See dkt. no. 254.) On April 15, 2024, the Government filed a letter in opposition to Defendant's Motion. (See dkt. no. 253.) On June 12, 2024, Defendant filed another pro se motion to amend his Motion seeking a sentence reduction or compassionate release. (See dkt. no. 262.) Following the Court's appointment of counsel to provide supplemental briefing on Defendant's Motion and pro-se reply to the Government's opposition (see dkt. no. 260), counsel for Defendant filed a supplemental letter in support of his Motion for compassionate release (dkt. no. 266). On October 30, 2024, the

3

Government submitted a letter in opposition to the supplemental letter.  (See dkt. no. 269.)  On April 25, 2025, counsel for Defendant submitted a reply.  (See dkt. no. 274.)

## II. Legal Standards

### A. 28 U.S.C. § 2255

28 U.S.C. § 2255 permits a federal prisoner to challenge his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  However, a one-year statute of limitations period applies to Section 2255 motions, which runs from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f)(3).  "[C]ourts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence and thus are subject to the § 2255 statute of limitations." Green v. United States, 415 F. Supp. 3d 338, 341 (W.D.N.Y. 2019) (citing Perry v. Warden Fort DIX FCI, 609 F. App'x 725, 727 (3d Cir.

4

2015)); see also Ospina v. United States, 386 F.3d 750, 752 (6th Cir. 2004) ("A prisoner is in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him." (citations omitted)).

### B. 18 U.S.C. § 3582

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10-CR-184, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2020). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by

5

a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. U.S. SENT'G GUIDELINES MANUAL § 1B1.13 (U.S. SENT'G COMM'N, annotated 2023). The Court of Appeals, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. See United States v. Brooker, 976 F.3d 228, 234-36 (2d Cir. 2020). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Id. at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16-CR-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing

6

U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id.  Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release.  Id.  These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11-CR-929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements.  See 18 U.S.C. § 3582(c)(1)(A)(i).  The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582.  See United

7

States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14-CR-546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

The statute also "sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Keitt, 21 F.4th at 71 n.2 (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, sets forth requirements that

8

must be met before a court can reduce a sentence. See 18 U.S.C. § 3582(c)(1)(A). As relevant here, section 1B1.13(b)(6) provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### III. **Discussion**

#### A. **28 U.S.C. § 2255**

Defendant's ineffective assistance of counsel claim is plainly time-barred under Section 2255(f). Defendant was sentenced by Judge Lynch on May 27, 2008; judgment was entered on June 6, 2008 (see dkt. no. 91); and the sentencing transcript became available on July 7, 2008. (See dkt. no. 96.) Defendant does not identify any reasons for his fifteen-year delay in seeking relief, and he recognizes that his Section 2255 motion is untimely. (Dkt. no. 266 at n.1.)[2]

---

[2] Defendant still reserves the right to make a further Section 2255 motion in the event that newly discovered evidence emerges or there are subsequent changes in law potentially impacting his claims. (Id.)

9

## B. 18 U.S.C. § 3582(c)(1)(A)(i)

### 1. Exhaustion of Administrative Remedies

Where a motion under 18 U.S.C. § 3582(c)(1)(A)(i) is made by a defendant, the defendant must first have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The Government argues that Defendant is not eligible for compassionate release because he is not currently in federal custody such that he can exhaust his administrative remedies.  (Dkt. no. 269 at 5.)

Courts in this Circuit have taken different approaches when considering whether relief under Section 3582(c) may be granted to a defendant that is not currently in BOP custody.  Some courts have denied such motions as premature where a defendant has not yet begun serving his federal sentence.  See United States v. Javed, No. 16-CR-601 (VSB), 2021 WL 2181174, at *4 (S.D.N.Y. May 27, 2021) ("such a request cannot be considered until a defendant is in BOP custody."); see also United States v. Konny, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020) ("by its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility.").  Other courts have held that relief under Section 3582(c) does not expressly require BOP custody

10

and that "the only absolute requirement is that a defendant be subject to a federal sentence." United States v. Austin, 468 F. Supp. 3d 641, 644 (S.D.N.Y. 2020) (granting a sentence reduction where defendant was released from federal custody but faced an imminent deadline to surrender to federal custody); see also United States v. Thrower, 495 F. Supp. 3d 132, 138 (E.D.N.Y. 2020) (granting compassionate relief for a defendant whose sentence was vacated and later faced reincarceration after the decision to vacate was reversed).

Here, Defendant is in state custody but is subject to a concurrent federal sentence and is awaiting a consecutive federal sentence. Under these circumstances, the Court concludes that denying Defendant the opportunity to seek compassionate release would be "'hypertechnical,' 'inequitable,' and contrary to the First Step Act's purpose." Thrower, 495 F. Supp. 3d 132 at 140 (citing Austin, 468 F. Supp. 3d at 644-45).

The Government also argues that Defendant failed properly to request relief from "the warden of his federal facility." (Dkt. no. 269 at 5.) Defendant contends that in February 2024, he submitted a request to the Director of the BOP and never received a response. (Dkt. no. 262 at 3.)[3]

---

[3] Defendant claims the Government forfeited the exhaustion defense because it did not "explicitly claim that [Defendant] has failed to meet th[e] [exhaustion] requirement." (cont'd)

Courts in this Circuit disagree whether the exhaustion requirement in Section 3582(c)(1)(A) is waivable by the Court. Some courts have excused failure to comply with the exhaustion requirement for equitable reasons like futility. See United States v. Scparta, 567 F. Supp. 3d 416, 422 (S.D.N.Y. 2020) ("the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions"); United States v. Haney, 454 F. Supp. 3d 316, 320 (S.D.N.Y. 2020) (concluding that a court has discretion to waive the exhaustion requirement in Section 3582(c)(1)(A)). Others have rejected that approach, holding that the exhaustion requirement ought to be strictly construed); United States v. Binns, No. 12-CR-31 (VM), 2020 WL 2488241, at *1 (S.D.N.Y. May 14, 2020) (denying a motion for compassionate release as premature and requiring exhaustion where defendant was in state custody, had not yet begun his federal sentence, and offered no evidence he had asked the BOP for a reduction in his sentence). Here, Defendant attempted to exhaust his federal administrative remedies by seeking relief from the Director of the BOP rather than a warden of a federal facility given his state incarceration. Recognizing that compliance with the statutory exhaustion requirement would be impracticable under the circumstances, the Court waives the

---

(cont'd) (Dkt. no. 266 at 4.) Given the Court's decision to waive the exhaustion requirement, the Court need not reach this issue.

exhaustion requirement and will review Defendant's motion for compassionate release on the merits.

## 2. Extraordinary and Compelling Reasons

As the Court has already noted in recommending that the BOP retroactively designate Defendant's state correctional facility nunc pro tunc as a federal facility and that his federal sentence run concurrently with his state sentence, Defendant has demonstrated:

> extraordinary rehabilitation and abundant good works during the period of his lengthy incarceration. As noted above, Mr. Fernandez submitted a voluminous record of his accomplishments during his time in state custody, including employment records and numerous Inmate Progress Reports characterizing him as an "excellent" employee. (See dkt. no. 234-1, at 27-48.) Of the seventeen character letters Mr. Fernandez submitted, ten were written by corrections officers at Green Haven. (See id. at 7-8, 13-20.) Read together, these letters describe Mr. Fernandez as a polite, hard-working man who volunteers his time in various constructive programs at Green Haven and would contribute to society immediately upon his release from his incarceration. (See id.) One Green Haven corrections officer went so far to say he "wish[ed] all inmates acted in [Mr. Fernandez's] manner," (see id. at 15), while a social worker in the state's Office of Mental Health who has known Mr. Fernandez since at least 2018 remarked that Mr. Fernandez "utilizes every opportunity to help others" and "will be an asset to his community" upon his release from prison, (id. at 5.) A sergeant who has worked with Mr. Fernandez for over four years and has twenty-four years' experience as a corrections officer opines that "Larry is no risk to return to his previous ways that incarcerated him in the first place." (Id. at 7.) Another officer, who has worked at Green Haven for eleven years, notes that he has been "asked many times over the years to write this kind of letter but ha[s] refused" and goes on to say, "I truly believe Mr. Fernandez has made the changes in his life to be a productive member

>of society." (Id. at 17.) Another corrections officer who has observed Mr. Fernandez's visits with his family and friends for five years comments that Mr. Fernandez's interactions with his wife and two sons have been "very inspirational" and that Mr. Fernandez's "decision making process is greatly influenced by his responsibility as a husband, father and a man of God." (Id. at 16.) He sees Mr. Fernandez as "being a productive citizen when returning back into society." (Id.) Finally, a friend from 1996 has offered Mr. Fernandez employment "as well as housing, moral and financial support upon his release." (Id. at 22-23.)

(Nov. 16 Order at 13-15.)

In addition, Defendant has extraordinary family ties, despite his lengthy incarceration. As related by his attorney:

> Mr. Fernandez while in state custody for the past nineteen years, based on his institutional record and lack of serious disciplinary infractions, was granted permission to participate in the Family Reunion Program. The Family Reunion Program is unique to the NYS Correctional System. For the last twelve years he has been afforded the opportunity every two weeks to have 48 hours of unsupervised time with his family in a trailer on the grounds of the prison. During this period, he forged a relationship with Karina Guzman Fernandez who he married in 2012. The couple had a child, who is now 6 years of age. To this day, the family has availed themselves of the visitation privileges on a regular basis.

(Dkt. no. 266 at 12.)

Defendant's family ties also include his 68-year-old paraplegic father, Jose Fernandez. Prior to his incarceration, Defendant cared for his wheelchair-bound father and will continue to do so upon his release. Indeed, Defendant intends to have his father move in with him and his family upon release. (Id. at 12-13.)

14

Defendant also has a solid reentry plan.  He intends to live with his wife and their son in Manhattan.  His wife is employed, and he has an offer of employment at his cousin's maintenance company.  In addition, Defendant has earned numerous educational and vocational certificates during his period of incarceration.  (Id. at 12.)

Taken together, Defendant's extraordinary rehabilitation, extraordinary family ties, and solid reentry plan combine to constitute extraordinary and compelling reasons warranting release.

### 3. Section 3553(a) Factors

The Court reiterates its finding in the Nov. 16 Order that the goals of the criminal justice system are furthered by Defendant's early release.  The Court found:

> With respect to the nature and circumstances of the offense, surely Mr. Fernandez's offenses are among the most serious.  As noted, he pleaded guilty to a gunpoint robbery and kidnapping in violation of 18 U.S.C. §§ 1951, 924(c)(1)(A)(ii) and 2.  (See dkt. no. 91.)  In state court, he was convicted of attempted murder, assault, and criminal possession of a weapon arising out of a shooting that caused his victim to lose a leg.  (See Fed. Sent'g Tr. at 3:18-24; State Sent'g Tr. at 7-8.)  There is no doubt that such heinous crimes require a serious sentence.
>
> With respect to the history and characteristics of the Defendant, Mr. Fernandez's criminal history speaks for itself.

As noted above, on the other side of the scale are Defendant's extraordinary rehabilitation and abundant good works during his incarceration together with his extraordinary family ties and solid reentry plan.

In the Nov. 16 Order, the Court continued:

> With respect to the paragraph two factors, certainly there is a need to punish Mr. Fernandez for his heinous crimes.  In the Court's view, however, his incarceration of some fifteen years now fulfills that sentencing objective.
>
> General deterrence is always a factor, and again the Court evaluates that a sentence of this length will deter others attempting to prey on the community in a way that Mr. Fernandez did.
>
> With respect to specific deterrence, the Court notes the many declarations filed in support of Mr. Fernandez attesting that he will not be a danger to the community.  Accordingly, the Court finds that this sentencing objective is fulfilled.
>
> The paragraph (D) factors of educational and vocational training seem to have been fulfilled here, too, based on the letters and certificates Mr. Fernandez filed.  The factors of medical care or other correctional treatment do not seem to be relevant.
>
> The Court is aware of the paragraph (3), (4), and (5) factors.
>
> Given the length of Mr. Fernandez's incarceration of some fifteen [now nineteen] years, the Court does not perceive that any unwarranted sentencing disparity would be present if Mr. Fernandez's sentences ran concurrently.
>
> Finally, the paragraph (7) factor of restitution is not particularly relevant here.

On balance, the Court finds that the Section 3553(a) factors counsel in favor of granting Defendant a time served sentence on his eighty-four-month consecutive sentence.

IV. **Conclusion**

For the reasons set forth above, Defendant's motion with respect to § 2255 is denied, and his motion pursuant to § 3582(c)(1)(A) is granted in that his eighty-four-month consecutive sentence is reduced to time served.

**SO ORDERED.**

Dated:   New York, New York
         August 12, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge